```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X
                                     :
UNITED STATES OF AMERICA             :
                                     :   INFORMATION
       - v. -                        :
                                     :   21 Cr. 471  (PKC)
ANTHONY STIMLER,                     :
                                     :
                Defendant.           :
                                     :
- - - - - - - - - - - - - - - - - - X
```

**COUNT ONE**
**(Conspiracy to Violate the Foreign Corrupt Practices Act)**

The United States Attorney charges:

**Overview**

1.   Between at least in or about 2007 and in or about 2018, ANTHONY STIMLER, the defendant, and others known and unknown, agreed to pay, and in fact paid, millions of U.S. dollars in bribes through intermediaries to foreign officials in multiple countries, including Nigeria, on behalf of a commodity trading and mining company with global operations ("Company 1"), in violation of the Foreign Corrupt Practices Act ("FCPA").  In Nigeria, in exchange for the bribes, foreign officials caused the Nigerian state-owned and state-controlled oil company to award oil contracts and to provide more lucrative grades of oil on more favorable delivery terms to Company 1, two wholly-owned subsidiaries of Company 1 ("Subsidiary 1," "Subsidiary 2," and, collectively, the "Company

1 Subsidiaries"), and their business partners.  After joining the bribery scheme, which had been initiated by other employees of the Company 1 Subsidiaries, STIMLER, while acting within the scope of his employment as an employee of Subsidiary 2 and acting on behalf of Company 1, with the intent, at least in part, to benefit Company 1 and the Company 1 Subsidiaries, conspired with others to make millions of U.S. dollars in corrupt bribe payments to foreign officials in Nigeria, and elsewhere, to obtain and retain business for, and to direct business to, Company 1, the Company 1 Subsidiaries, and others.  In furtherance of, and to promote the corrupt bribery scheme, STIMLER and others conspired to transmit the bribe payments from Switzerland to and through the United States, and from the United States to foreign countries.

### Relevant Individuals and Entities

2.  At all times relevant to this Information, the Nigerian National Petroleum Corporation ("NNPC") was a Nigerian state-owned and state-controlled oil company headquartered in Abuja, Nigeria.  The Nigerian government directly owned and controlled NNPC, which performed government functions.  NNPC was an "instrumentality" of a foreign government, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A), and employees of NNPC were "foreign official[s]," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

3. At all times relevant to this Information, Company 1 was a commodity trading and mining company headquartered in Switzerland with operations and subsidiaries in various locations around the world, including the United States, United Kingdom, Africa, and South America.

4. At all times relevant to this Information, the Company 1 Subsidiaries were wholly-owned subsidiaries of Company 1.  The Company 1 Subsidiaries, located in London, United Kingdom, served as Company 1's head offices for oil and gas trading.  Subsidiary 1 was a direct subsidiary of Company 1 and the direct owner of Subsidiary 2.  Between at least in or around 2007 and at least in or around 2014, Company 1 entered into multiple contracts to purchase crude oil from NNPC and designated Subsidiary 1, via a services agreement, to administer the contracts.  Employees of both Subsidiary 1 and Subsidiary 2 in fact administered the contracts.

5. ANTHONY STIMLER, the defendant, a United Kingdom citizen and resident, was a trader at Subsidiary 2.  STIMLER worked on the West Africa desk from in or around 2002 until in or around 2009 and then again from in or around June 2011 until in or around August 2019.  In that role, STIMLER had responsibility for crude oil purchases from, among other places, Nigeria, and acted on behalf of Company 1 in procuring crude oil from Nigeria.

3

6. At all times relevant to this Information, "Intermediary Company 1" was a Nigerian company used by Company 1 and the Company 1 Subsidiaries to pay bribes to Nigerian officials in order to obtain Nigeria oil cargoes from NNPC. Intermediary Company 1 contracted directly with Company 1 from in or around 2007 until in or around 2011, and with Subsidiary 2 from in or around 2011 until in or around 2014.

7. At all times relevant to this Information, "Intermediary Company 2" was a Cyprus-incorporated entity used by the Company 1 Subsidiaries to pay bribes to Nigerian officials in order to obtain Nigeria oil cargoes from NNPC. Intermediary Company 2 had an affiliated company incorporated in the British Virgin Islands which used the same name as the Cypriot company.

8. At all times relevant to this Information, "Co-Conspirator 1" was a Nigerian and U.K. citizen and a resident of Nigeria and the United Kingdom, and was the owner and principal employee of Intermediary Company 1.

9. At all times relevant to this Information, "Co-Conspirator 2" was a United Kingdom citizen and resident, a trader at Subsidiary 2 from in or around March 1993 until in or around December 2009, and a consultant for Subsidiary 2 from in or around January 2010 until in or around December 2012 and again from in or around April 2015 until in or around March 2017, who acted on behalf of Company 1 in procuring crude oil from Nigeria.

4

10. At all times relevant to this Information, "Co-Conspirator 3" was a United Kingdom citizen and resident, and a trader at Subsidiary 2 from in or around July 2011 until in or around August 2019 who acted on behalf of Company 1 in procuring crude oil from Nigeria.

11. At all times relevant to this Information, "Co-Conspirator 4" was a citizen of Mexico and Spain, and a trader at Subsidiary 2 from in or around July 2009 until in or around October 2012 who acted on behalf of Company 1 in procuring crude oil from Nigeria.

12. At all times relevant to this Information, "Co-Conspirator 5" was a United Kingdom citizen and resident, a risk manager at Subsidiary 1 starting in or around April 2009, and, since in or around 2013, a trader at Subsidiary 2 who acted on behalf of Company 1 in procuring crude oil from Nigeria.

13. At all times relevant to this Information, "Co-Conspirator 6" was a French citizen and resident, and was employed by the British Virgin Islands affiliate of Intermediary Company 2.

14. At all times relevant to this Information, "Co-Conspirator 7" was an Israeli citizen and resident, and was employed by Intermediary Company 2.

15. "Foreign Official 1" was a high-ranking Nigerian government official from in or around 2010 until in or around 2015. Foreign Official 1 was a "foreign official," as that term is

defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

### Manner and Means of the Conspiracy

16. The manner and means by which ANTHONY STIMLER, the defendant, and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, using and paying inflated and fraudulent invoices submitted to Company 1 and the Company 1 Subsidiaries by intermediaries to disguise the nature and purpose of bribe payments made to government officials, which payments were made in order to obtain and retain business and to obtain business advantages for Company 1, the Company 1 Subsidiaries, and others.

### Statutory Allegations

17. From at least in or around 2007 up to and including in or around 2018, in the Southern District of New York and elsewhere, ANTHONY STIMLER, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate the FCPA, Title 15, United States Code, Section 78dd-3.

18. It was a part and an object of the conspiracy that ANTHONY STIMLER, the defendant, and others known and unknown, would and did, while in the territory of the United States, willfully and corruptly make use of the mails and a means and instrumentality

of interstate commerce and do an act in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offer, gift, promise to give, and authorize the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (A)(i) influencing an act and decision of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such foreign official; and (iii) securing an improper advantage; and (B) inducing such foreign official to use that foreign official's influence with a foreign government and instrumentality thereof to affect and influence an act and decision of such government and instrumentality, in order to assist in obtaining and retaining business for and with, and directing business to, a person, in violation of Title 15, United States Code, Section 78dd-3, to wit, STIMLER and others agreed to pay and offer money and other things of value to foreign officials in Nigeria, and elsewhere, to assist STIMLER and others in obtaining and retaining business for, and directing business to, Company 1, the Company 1 Subsidiaries, and others.

Overt Acts

19.  In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a.  At least in or around 2009, Co-Conspirator 2 used coded language, including references to "newspapers" in discussing bribe payments to foreign officials in Nigeria and elsewhere.

    b.  On or around February 9, 2012, Co-Conspirator 1 sent a series of emails to ANTHONY STIMLER, the defendant, Co-Conspirator 3, and Co-Conspirator 4, discussing the need for a "filing," a coded reference to a bribe payment to foreign officials.

    c.  In or around December 2013, STIMLER agreed with Co-Conspirator 3, Co-Conspirator 5, and Co-Conspirator 1 to more than triple the fees paid to Intermediary Company 1 for certain transactions for the purpose of paying bribes to an NNPC official in order to obtain favorable dates and grades of oil.

    d.  In or around March 2014, STIMLER and Co-Conspirator 3 requested and received approval for Subsidiary 2 to make a $500,000 payment to Intermediary Company 1, intending for Co-Conspirator 1 to pass on a portion of the payment to a foreign official in Nigeria to assist Company 1 and the Company 1

Subsidiaries in obtaining business advantages, including eligibility to purchase oil cargoes from the NNPC.

   e. On or about September 25, 2014, Co-Conspirator 6 sent an email to STIMLER advising that Foreign Official 1 had stated that "all the customers of NNPC are giving in advance [$300,000] each month/cargo plus a certain amount which varies at the moment" in connection with a then-upcoming political election.

   f. On or about October 3, 2014, in response to the information communicated by Co-Conspirator 6, STIMLER caused Subsidiary 2 to send a wire transfer of approximately $300,000 (the "Payment") from Subsidiary 2's bank account in Switzerland, through a bank in the Southern District of New York, to Intermediary Company 2's bank account in Cyprus.

   g. On or about October 5, 2014, STIMLER sent an email to Co-Conspirator 6 and Co-Conspirator 7 in which STIMLER stated, in substance and in part, that Subsidiary 2's management had approved the Payment and wrote, "[S]o please please make sure on your side, NNPC perform[s] . . . ."

   h. On or about April 20, 2015, while in the United States, STIMLER received an email in which Co-Conspirator 6 offered to pay a bribe to a Nigerian official of approximately $50,000 per oil cargo for four cargoes of NNPC oil to be delivered in May and June 2015.

    i. On or about April 20, 2015, while in the United States, STIMLER replied to Co-Conspirator 6's email, expressing interest in one of the June 2015 NNPC oil cargoes.

    j. On or about May 5, 2015, STIMLER received an invoice from Intermediary Company 2 for $50,000 as an "Advance Payment" against the June cargo discussed supra in paragraphs (h) and (i).

    k. On or about May 5, 2015, STIMLER caused Subsidiary 2 to pay Intermediary Company 2's invoice through a wire transfer of approximately $50,000 from Subsidiary 2's bank account in Switzerland, through a bank in the Southern District of New York, to Intermediary Company 2's bank account in Cyprus.

  (Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Commit Money Laundering)

 The United States Attorney further charges:

 20. Paragraphs 1 through 16 of this Information are realleged and incorporated by reference as if fully set forth herein.

 21. From at least in or around 2007 up to and including in or around 2018, in the Southern District of New York and elsewhere, ANTHONY STIMLER, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in

violation of Title 18, United States Code, Section 1956(a)(2)(A). It was a part and an object of the conspiracy that ANTHONY STIMLER, the defendant, and others known and unknown, would and did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, (a) a felony violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-3, and (b) offenses against a foreign nation involving bribery of a public official, in violation of Nigerian law, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), in violation of Title 18, United States Code, Section 1956(a)(2)(A), to wit, STIMLER agreed to transmit and caused to be transmitted funds from Switzerland to and through the United States, and from the United States to foreign countries, in furtherance of a scheme to pay and offer money and other things of value to foreign officials in Nigeria, and elsewhere, in order to obtain and retain business for, and to direct business to, Company 1, the Company 1 Subsidiaries, and others.

(Title 18, United States Code, Section 1956(h).)

FORFEITURE ALLEGATIONS

22.     As a result of committing the offense alleged in Count One of this Information, ANTHONY STIMLER, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

23.     As a result of committing the money laundering offense alleged in Count Two of this Information, ANTHONY STIMLER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

Substitute Asset Provision

24.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

       (a)     cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Sections 853; and Title 28, United States Code, Section 2461.)

*Daniel S. Kahn*
DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department
of Justice

*Ilan T. Graff/JNM*
ILAN T. GRAFF
Deputy United States Attorney
for the Southern District of
New York

*Deborah Connor/nwk*
DEBORAH CONNOR
Chief, Money Laundering and
Asset Recovery Section
Criminal Division
United States Department
of Justice

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

- v. -

**ANTHONY STIMLER,**

                      **Defendant.**

**INFORMATION**

21 Cr. \_\_\_ (\_\_\_)

(15 U.S.C. § 78dd-3, 18 U.S.C. §§ 371, 1956(a)(2)(A), and 1956(h))

ILAN T. GRAFF
Deputy United States Attorney

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

DEBORAH CONNOR
Chief, Money Laundering and
Asset Recovery Section
Criminal Division
U.S. Department of Justice

Filed 7/26/2021

P. Kevin Castel
United States District Judge