L7QQstiP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     UNITED STATES OF AMERICA
3
                 v.                          21 CR 471 (PKC)
4                                            Remote Video Plea

5

     ANTHONY STIMLER
6
                     Defendant
7    ------------------------------x

8                                            New York, N.Y.
                                             July 26, 2021
9                                            11:00 a.m.

10
     Before:
11
                          HON. P. KEVIN CASTEL
12                                           District Judge

13
                             APPEARANCES
14
     AUDREY STRAUSS
15        Acting United States Attorney for the
          Southern District of New York
16   MICHAEL McGINNIS
     CHRISTOPHER DiMASE
17        Assistant United States Attorney

18   BUCKLEY LLP
          Attorneys for Defendant
19   DAVID KRAKOFF
     NADAV ARIEL
20

21   ALSO PRESENT:   MICHAEL KHOO, DOJ (Money-Laundering Unit)
                      LEILA BABAEVA, DOJ (Fraud Unit)
22                    DOMINIQUE JACKSON, USPS (SDNY)

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

L7QQstiP

 1              (The Court and all parties appearing via

 2       videoconference)

 3              THE COURT:  This is United States of America against

 4       Anthony Stimler.  Appearing for the government.

 5              MR. McGINNIS:  Good morning, your Honor.

 6              You have Michael McGinnis and Christopher DiMase from

 7       the U.S. Attorney's Office from the Southern District of New

 8       York.

 9              We are joined today by Michael Khoo from the

10       Department of Justice Money Laundering and Asset Recovery

11       Service Section, and Leila Babaeva from the Department of

12       Justice Fraud Section.

13              THE COURT:  All right.  Mr. Stimler, can you hear me?

14              THE DEFENDANT:  Yes, I can, your Honor.

15              THE COURT:  And can you see me?

16              THE DEFENDANT:  I can indeed, your Honor.

17              THE COURT:  Thank you.

18              Appearing for the defendant, please?

19              MR. KRAKOFF:  Good morning, your Honor.

20              David Krakoff and Nadav Ariel from the Buckley LLP in

21       Washington DC on behalf of Mr. Stimler.

22              THE COURT:  Mr. Krakoff, I know you have filed a

23       *pro hac vice* motion, and it appears to be in good order, and

24       I'm going to direct that that be granted, of course, subject to

25       paying the admission fee.

L7QQstiP

1          MR. KRAKOFF:  Thank you, your Honor.

2          THE COURT:  And also on from pretrial services?

3          MS. JACKSON:  Good morning, your Honor.

4     Dominique Jackson here from pretrial services.

5          THE COURT:  Thank you for being with us this morning.

6          Now, Mr. Stimler, I have been advised that you have

7     signed a waiver of your right to be physically present at this

8     proceeding.  In fact, you signed that apparently on July 23,

9     2021.  Is that correct, sir?

10          THE DEFENDANT:  That is correct, your Honor.

11          THE COURT:  Did you understand that you have the right

12     to appear in a courtroom with your lawyer at your side, and by

13     signing the waiver of the indictment -- or, rather, the right

14     to be present, you gave up that right, and consented to proceed

15     in the manner that we are proceeding this morning, both by

16     audio hookup and by video link.  Do you understand you gave up

17     those rights?

18          THE DEFENDANT:  Yes, I do, your Honor.

19          THE COURT:  All right.  I want you to know,

20     Mr. Stimler, if at any point today you want to speak in private

21     with your lawyers, I will give you the opportunity to do so.

22     Do you understand?

23          THE DEFENDANT:  Yes, I do, your Honor.  Thank you.

24          THE COURT:  Furthermore, having reviewed the plea

25     agreement, the nature of the agreement that the defendant is

L7QQstiP

1    entering into, it appears to me that further delay of this

2    proceeding cannot take place without substantial harm to the

3    interests of justice, and this is in part because of where

4    Mr. Stimler resides, what the travel restrictions are at

5    present, and the advantages to both the government and to the

6    defendant in this particular plea arrangement.  So,

7    accordingly, I find that this proceeding cannot take place at a

8    later date without substantial harm to the interests of

9    justice.

10          Now, Mr. Stimler, in a moment I'm going to place you

11   under oath, and I'm going to ask you certain questions and

12   inform of you certain rights.  If I ask you something or I tell

13   you something, and you don't quite understand, please let me

14   know, and I'll put it into different words.

15          Also, if at any point today you wish to speak in

16   private with your lawyers, I will give you the opportunity to

17   do so.  Do you understand all of that?

18          THE DEFENDANT:  Yes, I do, your Honor.  Thank you.

19          THE COURT:  Please raise your right hand.

20          (Defendant sworn)

21          THE COURT:  You can put your hand down.  You're now

22   under oath, and your answers to my questions are subject to the

23   penalties of perjury or of making a false statement if you do

24   not answer truthfully.  Also, anything you say today may be

25   used in any such proceeding.  Do you understand all of that?

L7QQstiP

1          THE DEFENDANT:  Yes, I do, your Honor.

2          THE COURT:  How old are you, sir?

3          THE DEFENDANT:  I'm 49 years old.

4          THE COURT:  And how far did you go in school?

5          THE DEFENDANT:  I finished secondary school in the

6   United Kingdom, close to the age of 18 with A-level

7   certification, and then I went on to Talmudical college in

8   Israel for a further three years.

9          THE COURT:  Are you now or have you recently been

10  under the care of a medical doctor?

11         THE DEFENDANT:  No, I have not.

12         THE COURT:  Have you ever been treated for a mental

13  illness?

14         THE DEFENDANT:  I have not been treated for a mental

15  illness, your Honor.

16         THE COURT:  Have you had any addictions?

17         THE DEFENDANT:  I have no addictions, your Honor.

18         THE COURT:  How do you feel today?

19         THE DEFENDANT:  I feel okay, your Honor, focused.

20         THE COURT:  Is your mind clear?

21         THE DEFENDANT:  My mind is clear, your Honor, yes.

22         THE COURT:  Mr. Krakoff, any doubts as to defendant's

23  competence to proceed?

24         MR. KRAKOFF:  No, your Honor, none at all.

25         THE COURT:  Based upon my observations and the

L7QQstiP

| | |
|---|---|
| 1 | responses to my questions, I find that the defendant is fully |
| 2 | competent to enter an informed plea. |
| 3 | Now, Mr. Stimler, I have been advised that you have |
| 4 | signed a waiver of indictment.  Is that correct, sir? |
| 5 | THE DEFENDANT:  Yes, that is correct, your Honor. |
| 6 | THE COURT:  Did you read it before you signed it? |
| 7 | THE DEFENDANT:  I have, your Honor, yeah. |
| 8 | THE COURT:  Did you discuss it with your lawyer before |
| 9 | you signed it? |
| 10 | THE DEFENDANT:  I did, your Honor, yes. |
| 11 | THE COURT:  Did you understand it before you signed |
| 12 | it? |
| 13 | THE DEFENDANT:  I did understand it before I signed |
| 14 | it, your Honor, yes. |
| 15 | THE COURT:  Did you understand that you have the right |
| 16 | to have the evidence underlying the charges presented to a |
| 17 | grand jury of 23 people and to have those people decide by |
| 18 | majority vote whether you should be charged or not.  And by |
| 19 | signing the waiver of indictment, you gave up that right and |
| 20 | authorized the filing of the charges solely on the basis of the |
| 21 | signature of the prosecutor.  Did you understand that? |
| 22 | THE DEFENDANT:  Yes, I did, your Honor. |
| 23 | THE COURT:  Find the waiver of indictment is knowing |
| 24 | and voluntary, and it is accepted. |
| 25 | Now, the information is deemed filed in open court. |

L7QQstiP

1          Mr. Krakoff, have you and your client received the

2     information, reviewed it and discussed it?

3          MR. KRAKOFF:  We have, your Honor, at length.

4          THE COURT:  Is there an application to waive the

5     public reading thereof?

6          MR. KRAKOFF:  Yes, your Honor, we make that

7     application to waive the public reading.

8          THE COURT:  That application is granted, and I will

9     provisionally enter a plea of not guilty, recognizing that

10    defendant's intention today is to enter a plea of guilty.  Is

11    that satisfactory, Mr. Krakoff?

12         MR. KRAKOFF:  Yes, it is, your Honor.  Thank you.

13         THE COURT:  All right.  Now, Mr. Stimler, have you

14    reviewed the information, the charging document, and the

15    evidence underlying those charges with your lawyer,

16    Mr. Krakoff?

17         THE DEFENDANT:  Yes, I have, your Honor.

18         THE COURT:  Have had enough time to consider your

19    options in this case?

20         THE DEFENDANT:  Yes, I have, your Honor.

21         THE COURT:  Are you satisfied with your lawyer's

22    representation of you?

23         THE DEFENDANT:  I am, your Honor.

24         THE COURT:  I am now going to explain to you the

25    rights you would have under the U.S. Constitution and U.S. Laws

L7QQstiP

1     if this case proceeded to trial.  Now, these are the rights you

2     are giving up by pleading guilty.  Do you understand that?

3              THE DEFENDANT:  Yes, I do, your Honor.

4              THE COURT:  Under the Constitution of the United

5     States, you are entitled to a speedy and public trial by an

6     impartial jury on the charges contained in the information.  At

7     such a trial, you would not have to prove you were innocent.

8     The government would be required to prove each element of each

9     crime by proof beyond a reasonable doubt.  Before you could be

10    found guilty, a jury of 12 people would have to agree

11    unanimously that you were guilty.  Do you understand all of

12    that?

13             THE DEFENDANT:  Yes, I do, your Honor.

14             THE COURT:  If there were a trial, you would be

15    entitled to be represented by a lawyer.  And if you could not

16    afford a lawyer, one would be appointed at public expense.  Do

17    you understand all of that?

18             THE DEFENDANT:  Yes, I do, your Honor.

19             THE COURT:  If there were a trial, the witnesses for

20    the government would have to come to court to testify.  You

21    would be able to see and hear them.  Your lawyer could question

22    them through cross-examination.  Your lawyer could object to

23    evidence offered by the government.  Your lawyer could present

24    evidence and could ask the Court to compel witnesses to appear

25    at trial on your behalf.  Do you understand all of that?

L7QQstiP

1          THE DEFENDANT:  Yes, I do, your Honor.

2          THE COURT:  If there were a trial, you would have the

3     right to testify if you chose to do so.  You could come up and

4     take the witness stand.  Also, you would have the right not to

5     testify, and no one would be permitted to draw any inference or

6     suggestion of guilt from the fact that you decided not to

7     testify.  Do you understand all of that?

8          THE DEFENDANT:  Yes, I do, your Honor.

9          THE COURT:  Now, if you proceeded to trial and the

10    jury found you guilty, you would have the right to appeal that

11    finding.  Do you understand that?

12         THE DEFENDANT:  Yes, I do, your Honor.

13         THE COURT:  Now, those are the rights you would have

14    if the case proceeded to trial.

15         If you plead guilty, and I accept your guilty plea,

16    there will be no trial.  You will proceed to the sentencing

17    phase in which the Court will determine the punishment to be

18    imposed upon you.  Even now you have the right to change your

19    mind.  Instead of pleading guilty, you may plead not guilty and

20    go to trial.

21         Do you wish to plead not guilty and go to trial?

22         THE DEFENDANT:  No, I don't, your Honor.

23         THE COURT:  Thank you.

24         All right.  Do you understand that Count One of the

25    information charges you with conspiracy to violate the Foreign

L7QQstiP

Corrupt Practices Act from at least in or about 2007 up to and
including in or about 2018.  Do you understand that?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  Count One carries a maximum term of
imprisonment of five years, a maximum term of supervised
release of three years, a maximum fine pursuant to law of the
greatest of $250,000 or twice the gross pecuniary or monetary
gain derived from the offense or twice the gross pecuniary loss
to a person other than yourself as a result of the offense, and
a mandatory $100 special assessment.  Do you understand all of
that?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  Count Two charges you with conspiracy to
commit money laundering from in or about 2007 to up to and
including in or about 2018.  Count Two carries a maximum term
of imprisonment of 20 years, a maximum term of supervised
release of three years, a maximum fine of the greatest of
$500,000 or twice the value of the monetary instrument or funds
involved in the transportation, transmission or transfer, and a
$100 mandatory special assessment.  Do you understand all of
that?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  Now, with regard to supervised release,
there are terms and conditions attached to it, and if you do
not live up to them, you could be returned to prison for the

L7QQstiP

1    full period of supervised release.  So, say you receive a

2    prison term to be followed by a period of three years'

3    supervised release, and you live up to the terms of supervised

4    release for two years, but then you violate one of the terms

5    and conditions, you could be returned to prison for the full

6    period of three years.  Do you understand that?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  Are you a U.S. citizen?

9              THE DEFENDANT:  I am not, your Honor.

10             THE COURT:  Among the consequences of pleading guilty

11   in this case are that you would be removed or deported from the

12   United States and barred from reentering without the permission

13   of the Attorney General or designee.  The fact that you've

14   entered into this guilty plea and were convicted would doom --

15   likely doom any request for reentry, and it would doom any

16   prospect that you might have of becoming a United States

17   citizen.  Do you understand all of that?

18             THE DEFENDANT:  Yes, I do, your Honor.

19             THE COURT:  Now, Mr. Krakoff, is your client prepared

20   to admit the forfeiture allegations in the information today?

21             MR. KRAKOFF:  Yes, your Honor.

22             THE COURT:  All right.  The Court must also order

23   financial restitution to any person who I find was injured by

24   reason of your criminal conduct.  Do you understand that,

25   Mr. Stimler?

L7QQstiP

1          THE DEFENDANT:  Yes, I do your Honor.

2          THE COURT:  Now, are you being prosecuted in any

3    court:  State, federal, U.K. Court, court of any country of the

4    world or serving any sentence anywhere?

5          THE DEFENDANT:  No, I'm not, your Honor.

6          THE COURT:  Thank you.

7          In sentencing you, I will receive information from

8    your lawyer and from the government regarding the proper

9    guidelines range, Sentencing Guidelines range that applies in

10   your case.  And after hearing from your lawyer and from the

11   government, I will make my own determination of the correct

12   guideline range that applies in your case.

13         Even after determining the correct guideline range, I

14   need not follow it and can sentence you all the way up to the

15   statutory maximum.  The Sentencing Guidelines are advisory, and

16   they are one of the factors that the Court takes account of in

17   passing sentence upon you.  You will only be permitted to

18   appeal the sentence I impose on the basis that it is unlawful

19   or unreasonable.  Do you understand that?

20         THE DEFENDANT:  Yes, I do, your Honor.

21         THE COURT:  All right.  Let me hear from the

22   government as to the elements of the crime and how the

23   government would go about proving this case.

24         And I should tell you, sir, that the reason I am doing

25   this, Mr. Stimler, is so that you have a better understanding

L7QQstiP

1    of what the government would have to prove beyond a reasonable

2    doubt if this case went to trial.

3              So let me hear from the government on that.

4              MR. McGINNIS:  Yes, your Honor.  Beginning with Count

5    One, the elements are as follows:

6              Starting in or around 2007, the defendant agreed with

7    others to violate the bribery provisions of the Foreign Corrupt

8    Practices Act as charged in Count One of the indictment.  The

9    elements of the Foreign Corrupt Practices Act are as follows:

10             That the defendant acted corruptly and willfully; and

11   while in the territory of the United States, the defendant made

12   use of the mails for any means or instrumentality of interstate

13   commerce or did any other act in furtherance of an offer,

14   payment, promise to pay, or authorization of the payment of

15   money or of anything of value to a foreign official, a foreign

16   political party or to any person while the defendant knew that

17   all or a portion of the payment or gift would be offered, given

18   or promised, directly or indirectly, to a foreign official or

19   foreign political party.  This would be done for the purpose of

20   influencing any act or decision of the foreign official in his

21   or her official capacity, inducing the foreign official to do

22   or omit to do any act in violation of that official's lawful

23   duty, inducing that foreign official to use his or her

24   influence with a foreign government or instrumentality thereof,

25   to affect or influence any act or decision of such government

L7QQstiP

1    or instrumentality, or to secure any improper advantage; and

2    that the payment was made to assist, in this case, Glencore

3    International AG, including its affiliates and subsidiaries, in

4    obtaining business or obtaining business for or with, or

5    directing business to any person; that the defendant knowingly

6    and willfully became a member of this conspiracy; and that one

7    of the members of the conspiracy knowingly committed an overt

8    act in furtherance of the conspiracy.  Those are the elements

9    for Count One.

10            As to Count Two, the elements are as follows:

11            From in or around 2007 to in or around 2018, the

12    defendant agreed with others to commit international

13    promotional money laundering as charged in Count Two of the

14    indictment.  The elements of international promotional money

15    laundering are as follows:

16            The transport or transfer or cause to transfer or

17    transfer of a monetary instrument or fund from a place in the

18    United States or to or through a place outside the United

19    States or to a place in the United States from or through a

20    place outside the United States, with the intent to promote the

21    carrying on of a specified unlawful activity; here, violations

22    of the Foreign Corrupt Practices Act; and that the defendant

23    joined this conspiracy knowingly and willfully.

24            In addition to those elements, the government would

25    also have to prove venue in the Southern District of New York;

L7QQstiP

1    and as to venue, the government would only need prove this by a

2    preponderance of the evidence.

3           Were this case to proceed to trial, the government

4    would prove, among other things, the following:

5           That from on or about 2007 to on or about 2018, the

6    defendant agreed with others to pay bribes to foreign officials

7    located in Nigeria.  To accomplish and promote the bribery

8    scheme, the defendant and others caused wires to be sent from

9    bank accounts in Switzerland to bank accounts in Nigeria, and

10   that those transfers used correspondent bank accounts

11   maintained in the Southern District of New York.  In addition,

12   the defendant sent and received electronic communications in

13   furtherance of the bribery scheme while physically located in

14   the United States.

15          The government's evidence at trial would include,

16   among other things, the following:

17          Emails between the defendant and other co-conspirators

18   discussing the conspiracy and the payment of bribes to foreign

19   officials in Nigeria, including emails sent by the defendant

20   from the United States; emails from co-conspirators, including

21   the defendant, showing that the purpose of the wire transfers

22   was, in part, to make bribe payments in order to secure oil

23   business for the defendant's employer from Nigerian government

24   officials who exercised discretion and authority over the oil;

25   bank records showing the transfer of money from bank accounts

L7QQstiP

maintained in Switzerland to bank accounts maintained by
co-conspirators in Nigeria and through correspondent bank
accounts maintained in the Southern District of New York.

          The evidence would also include testimony from other
individuals involved in the scheme discussing how the money
received via international wire would be used to pay bribes to
foreign officials in order to secure business on behalf of the
International Commodity Trading Company, which company employed
the defendant.

          THE COURT:  Thank you.  I trust that completes your
presentation.

          MR. McGINNIS:  Yes, your Honor.  Thank you.

          THE COURT:  All right.  Mr. Stimler, please tell me in
your own words what you did that leads you to believe that you
are guilty of the crimes charged in Counts One and Two of the
information.

          THE DEFENDANT:  Of course, your Honor.

          I was employed at Glencore from 1998 to 2019 with a
break from early 2009 to mid 2011.  From around 2002 to 2009, I
worked as a junior trader on the West Africa crude oil trading
desk and then as a senior trader on the desk from when I
returned in mid 2011 until I left the company in 2019.

          Between around 2007 to 2009, I was involved in
discussions with another trader to direct payments to
intermediaries for the purpose of bribing Nigerian government

L7QQstiP

officials in order to obtain oil cargoes for Glencore.

From around 2011 to 2018, I approved bribe payments made by Glencore intermediaries to government officials in Nigeria to assist Glencore in receiving oil cargoes from the Nigerian government.

During that time, I communicated with Glencore's intermediaries by email, text messages and phone calls about the bribe payments.

When I made request for payments to intermediaries, I was aware that other Glencore traders who worked with me were doing the same thing by directing our intermediaries to make bribe payments to government officials, and I learned this through our conversations, emails and text messages.  Some of these bribe payment communications with the intermediaries took place over email while I was in the Southern District of New York.  I intended that a proportion of the payment to intermediaries operating in Nigeria were to be passed on to Nigerian state-owned oil company officials.  The purpose of the payment was to influence those officials' decisions regarding the Nigerian government's allocations of crude oil cargo, and to obtain favorable dates and grades terms for the benefit of Glencore.  Payments to the intermediaries were usually made in U.S. dollars.  I was fully aware that the transmitted dollar funds were sent from Glencore to European bank accounts through United States bank in Manhattan and then on to the

L7QQstiP

1    intermediaries' bank account in Nigeria, Cyprus and elsewhere.

2         Your Honor, I knew what I was doing was wrong and

3    unlawful.  I'm extremely remorseful for my conduct.  I take

4    full responsibility for my actions, and I have been cooperating

5    with the Department of Justice and the U.S. Attorney's Office

6    in their investigations for over two years now.

7         Thank you.

8         THE COURT:  Thank you, Mr. Stimler.

9         Does the government agree there's a sufficient factual

10   predicate for a plea of guilty to Counts One and Two of the

11   information?

12        MR. McGINNIS:  Yes, we do, your Honor.

13        THE COURT:  Mr. Krakoff, do you agree that there is a

14   sufficient factual basis for a plea of guilty to the two counts

15   of the information?

16        MR. KRAKOFF:  Yes, I do, your Honor.

17        THE COURT:  Mr. Krakoff, are you aware of any valid

18   defense that would likely prevail at trial or any other reason

19   why your client should not be permitted to plead guilty?

20        MR. KRAKOFF:  No, I don't, your Honor.

21        THE COURT:  Mr. Stimler, do you have any questions for

22   me?

23        THE DEFENDANT:  No, your Honor.

24        THE COURT:  With regard to Count One of the

25   information, how do you plead?  Guilty or not guilty.

L7QQstiP

1          THE DEFENDANT:  I plead guilty, your Honor.

2          THE COURT:  With regard to Count Two of the

3    information, how do you plead?  Guilty or not guilty.

4          THE DEFENDANT:  I plead guilty, your Honor.

5          THE COURT:  With regard to the forfeiture allegations

6    in paragraphs 22, 23, and 24, do you admit them or do you deny

7    them?

8          THE DEFENDANT:  I admit them, your Honor.

9          THE COURT:  All right.  Now, Mr. Stimler, I have a

10   number of questions to ask you about your plea agreement.

11         I have before me a plea agreement that on the cover

12   page bears the date of May 6, 2021 and appears to have been

13   signed by you on June 23 of this year, and it is seven pages in

14   length.  Have I correctly described your plea agreement with

15   the government?

16         THE DEFENDANT:  Yes, you have, your Honor.

17         THE COURT:  Did you read it before you signed it?

18         THE DEFENDANT:  Yes, I did, your Honor.

19         THE COURT:  Did you discuss it with your lawyers

20   before you signed it?

21         THE DEFENDANT:  Yes, I did, your Honor.

22         THE COURT:  Did you ask them questions, and did they

23   respond to your questions satisfactorily?

24         THE DEFENDANT:  Yes, they did, your Honor.

25         THE COURT:  Has anyone threatened you or forced you in

L7QQstiP

1    any way to enter into the plea agreement or to plead guilty?

2              THE DEFENDANT:  Not at all, your Honor.

3              THE COURT:  All right.  Has anyone promised you

4    anything or given you anything of value that's not set forth in

5    the plea agreement?

6              THE DEFENDANT:  No, not at all, your Honor.

7              THE COURT:  Does the plea agreement, the seven pages,

8    contain all of your understandings with the government?

9              THE DEFENDANT:  Yes, it does, your Honor.

10             THE COURT:  I want you to know that any prediction,

11   calculation or estimate that anyone has made to you, including

12   your own lawyer, as to what sentence I might give you is not

13   binding on me, not binding on the Court, and if it turns out to

14   be wrong, you will not be permitted to withdraw your guilty

15   plea.  Do you understand that?

16             THE DEFENDANT:  Yes, I do, your Honor.

17             THE COURT:  Now, one of the features of your agreement

18   with the government is that you and the government or you have

19   agreed with the government to provide it truthful cooperation

20   and substantial assistance.  Is that correct?

21             THE DEFENDANT:  Yes, that is correct, your Honor.

22             THE COURT:  And the government has said that if they

23   determine that you have provided truthful cooperation and

24   substantial assistance, they will make a motion addressed to me

25   under Section 5K1.1 of the Sentencing Guidelines and/or Section

L7QQstiP

1   3553(e) of Title 18 that I sentence you without regard to the

2   Sentencing Guidelines.  Is that correct?

3              THE DEFENDANT:  Yes, it is, your Honor.

4              THE COURT:  The determination of whether or not your

5   cooperation and assistance is substantial enough for the

6   government to make that motion is left to the government.  It's

7   not up to me, and I cannot second-guess it, nor can you second

8   guess it.  If for some reason the government decides not to

9   make a motion under 5K1.1 or Section 3553(e), or they make that

10  motion and I decline to grant it, you will not be permitted to

11  withdraw your guilty plea in this case.  Do you understand all

12  of that?

13             THE DEFENDANT:  Yes, I do, your Honor.

14             THE COURT:  And even if they do make the motion and I

15  grant it, it's up to the Court to determine how much weight to

16  give to your cooperation and your substantial assistance in

17  determining your sentence in this case.  Do you understand

18  that?

19             THE DEFENDANT:  Yes, I do, your Honor.

20             THE COURT:  And is it still your desire and intent to

21  plead guilty to Counts One and Two?

22             THE DEFENDANT:  Yes, it is, your Honor.

23             THE COURT:  And to admit the forfeiture allegations?

24             THE DEFENDANT:  Yes, I do, your Honor.

25             THE COURT:  All right.  I find that your guilty pleas

L7QQstiP

1    to Counts One and Two are knowing, voluntary and intelligent;

2    that you know your rights, you know the consequences of

3    pleading guilty, and there's a factual basis for your plea of

4    guilty.  So your plea of guilty to Counts One and Two is

5    accepted, as is your admission to the forfeiture allegations.

6         Further, I find that you entered into the plea

7    agreement knowingly, voluntarily and intelligently, and you

8    understand the provisions relating to substantial assistance

9    and the obligations of the government and the prerogatives of

10   the government to determine whether your assistance has been

11   substantial or not.

12        So I will order a presentence investigation and

13   report, and direct that no interview of you take place.  Now,

14   this presentence investigation is not going to take place in

15   the near future.  It will be put off for some time, and it's

16   important that you be candid, truthful and honest with the

17   people who prepare the presentence report.  Tell them the good

18   things and the not-so-good-things because the report will be

19   important in my decision on sentencing.  Before the day of

20   sentencing, you will have an opportunity to review that report.

21   If there are mistakes in it, point them out to your lawyer so

22   he can point them out to me.

23        And let me hear from the government on a control date

24   for sentencing.  Do you have a proposal?

25        MR. McGINNIS:  Yes, your Honor.  The parties would

L7QQstiP

1    propose an initial control date of six months from today, at

2    which point we would check back in with the Court to see if we

3    could potentially extend it as needed.

4               THE COURT:  I will ask my courtroom deputy to give us

5    a date.

6               And I understand that the defendant is moving for the

7    continuation of bail pending sentencing.  Is that correct,

8    Mr. Krakoff?

9               MR. KRAKOFF:  Yes, it is, your Honor.  And we have

10   proposed or sent to the Court a proposed bail package, that I

11   hope your Honor has received, filed by the United States

12   Attorney's Office.

13              THE COURT:  All right.

14              MR. KRAKOFF:  I would be happy to review it with the

15   Court if the Court would like.

16              THE COURT:  Just let me see whether -- I have his

17   report from pretrial services.  Let me see whether I have the

18   bail package.  All right, I think I have it here.  It's set

19   forth in a letter dated July 26, 2021.

20              MR. KRAKOFF:  That's correct, your Honor.

21              THE COURT:  For the record, does the government oppose

22   that bail package?

23              MR. McGINNIS:  No, your Honor.  We join in that

24   application.

25              THE COURT:  All right.  And I have pretrial services

L7QQstiP

1    on the line.  I have reviewed the pretrial services report.

2    Any objection to the bail package?

3             MS. JACKSON:  No objection here, your Honor.

4             THE COURT:  Thank you.

5             So defendant will be released subject to the following

6    conditions:  The defendant to surrender to the FBI for

7    processing by November 1, 2021; the defendant to reside in the

8    United Kingdom; the defendant to permit the law enforcement

9    officers identified by the government to monitor the GPS

10   coordinates of his mobile phone; the defendant to check in with

11   law enforcement officers identified by the government one time

12   per week; the defendant to sign a personal recognizance bond in

13   the amount of $500,000, which bond is to be cosigned by two

14   financially responsible persons and secured by $25,000 in cash;

15   and the defendant to refrain from travel outside the United

16   Kingdom without advance permission from the government.  Those

17   conditions must all be satisfied by August 16, 2021, and I will

18   so order the bail package on the letter of July 22, 2021, and

19   it will be docketed.

20            Anything further from the government?

21            MR. McGINNIS:  Nothing from the government, your

22   Honor.  Thank you very much.

23            THE COURT:  Anything further from the defendant?

24            THE DEFENDANT:  Nothing from me, your Honor.  Thank

25   you.

L7QQstiP

1              DEPUTY CLERK:  Judge?

2              THE COURT:  Yes, Flo?

3              DEPUTY CLERK:  Judge, it's Flo.  So I have a control

4     day of the January 28, 2022 at 9:00 a.m.

5              THE COURT:  January 28, 2022 at 9:00 a.m. control date

6     for sentencing.  Thank you, Flo.

7              Anything further, Mr. Krakoff?

8              MR. KRAKOFF:  No, your Honor.  Thank you.

9              THE COURT:  Thank you all very much.  We are

10    adjourned.

11             DEPUTY CLERK:  Judge, can I say one more thing?

12             THE COURT:  Yes.

13             DEPUTY CLERK:  He is going to be a cooperator but

14    everything is going on the docket; nothing is sealed?

15             THE COURT:  No one has made any application to me for

16    sealing.  Is that correct, government?

17             MR. McGINNIS:  That is correct, your Honor, we are not

18    making an application.

19             THE COURT:  Thank you very much.  We are adjourned.

20             (Adjourned)

21

22

23

24

25